CIRCLE LANES OF FAIRFIELD, INC., ET AL. *v.*
JOHN E. FAY, CLAIMS COMMISSIONER

FOREMOST-MCKESSON, INC., ET AL. *v.* JOHN E. FAY,
CLAIMS COMMISSIONER
(12437)
(12438)

PETERS, C. J., PARSKEY, SHEA, DANNEHY and SANTANIELLO, Js.

---

Argued February 13—decision released March 26, 1985

*Robert Y. Pelgrift,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant in both cases).

*William B. Rush,* with whom was *Thomas W. Witherington,* for the appellees (plaintiffs in each case).

PETERS, C. J. The principal issue in this case is the extent to which the Superior Court has jurisdiction to review actions of the claims commissioner in hearing and determining claims against the state of Connecticut. The plaintiffs, Circle Lanes of Fairfield, Inc., Foremost-McKesson, Inc., and Fairfield Bowling Co., Inc.,[1] suffered damage to their real and personal prop-

---

[1] The plaintiffs also included Continental Casualty Company, but that plaintiff has taken no part in this appeal, its claim having been finally and adversely adjudicated under General Statutes § 4-160b (a) which provides that "[t]he claims commissioner shall not accept or pay any subrogated claim

erty as a result of a flood. Alleging that their damages were caused by the state's negligent failure to design a proper culvert, they filed claims with the defendant John E. Fay, claims commissioner of the state of Connecticut, seeking his permission to sue the state.[2] When the defendant denied the plaintiffs' claims, and refused to permit them to sue,[3] the plaintiffs appealed to the trial court, *Jacobson, J.,* which determined that their cases should be remanded to the defendant with instruction to allow the plaintiffs to institute suit against the state of Connecticut. The defendant has appealed. We find error.

The finding and order of the defendant claims commissioner recites the underlying facts. The plaintiffs own property in an area of Fairfield which is part of Turney's Creek drainage basin. In 1960, there was a serious flood in this area. Although the flood was subsequently determined to have been the result of an inadequately designed culvert, a situation aggravated by the construction of Interstate 95, which added to the flow of waters in the area, the culvert was not changed. In 1972 the flood occurred that led to the current litigation, in which the plaintiffs claim the right to sue for substantial damages well in excess of their insurance coverage. Although the existing culvert was inadequate to prevent the storm waters from damaging the plaintiffs' property, the commissioner found

or any claim directly or indirectly paid by or assigned to a third party." Continental Casualty Company has paid the plaintiff Foremost-McKesson, Inc., $1,000,000 under a liability policy.

[2] The plaintiffs have filed negligence actions against the town of Fairfield in which they seek to join the state as a party defendant.

[3] The defendant's decision was an amended finding and order pursuant to an earlier appeal to the trial court, *Mulcahy, J.,* which had resulted in a remand to the defendant for a more complete finding of fact regarding the plaintiffs' claims. In light of our disposition of these appeals, we need not address the defendant's claim that the trial court had no jurisdiction to entertain a second administrative review when the plaintiffs did not appeal to this court from the rulings of the court, *Mulcahy, J.*

that this inadequacy was not the proximate cause of the plaintiffs' losses. The storm that caused the flooding was more severe than any storm that had been experienced in the area for more than 100 years, and even a rebuilt culvert would have been insufficient, the commissioner found, to contain such extraordinary flooding rainfall.[4]

In their appeal to the trial court, the plaintiffs challenged the decision of the defendant on all the grounds for judicial review provided by the Uniform Administrative Procedures Act, General Statutes § 4-183 (g).[5] The defendant moved for dismissal of the appeal to the trial court on the ground that the enactment of Public Acts 1982, No. 82-167, § 1, codified as General Statutes § 4-164a,[6] had deprived the trial court of its jurisdiction. The trial court denied the defendant's motion and, in its subsequent ruling on the merits, concluded that the defendant's decision was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"; General Statutes § 4-183 (g) (5); and "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted

---

[4] There was also a finding that one of the plaintiffs, whose property had been damaged in the 1960 flood, was contributorily negligent in failing to protect itself against the known risk of severe flooding in the area.

[5] General Statutes § 4-183 (g) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

[6] General Statutes § 4-164a provides: "COMMISSIONER EXEMPT FROM CERTAIN PROVISIONS OF UNIFORM ADMINISTRATIVE PROCEDURE ACT. The claims commissioner is exempt from the provisions of sections 4-177 to 4-183, inclusive."

exercise of discretion." General Statutes § 4-183 (g) (6). Having determined that "from the evidence . . . there is but a single conclusion which the Commissioner could reasonably have reached [, namely, that] [t]he state would be liable if it was a private person," the trial court remanded the case to the defendant with instructions that the plaintiffs be allowed to institute suit against the state of Connecticut.

The defendant's appeal to this court raises issues concerning: (1) the trial court's jurisdiction; (2) the scope of the trial court's review; and (3) the terms of the trial court's remand order. Because we hold that the trial court lacked jurisdiction to hear evidentiary challenges to the decision of the defendant commissioner, we find error without reaching the question of the propriety of the trial court's remand.

Our analysis of the jurisdiction of the Superior Court to review decisions of the commissioner of claims must begin with *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 376 A.2d 71 (1977). In *Hirschfeld,* we took as our point of departure the proposition that "Connecticut has long recognized the common-law principle of the state's immunity from suit on a claim for liability without its consent. It has expressly provided by constitutional provision and statutory enactment for the adjudication of claims against the state *with its permission. Fidelity Bank* v. *State,* 166 Conn. 251, 253, 348 A.2d 633 [1974]; Conn. Const., art. XI, § 4; General Statutes, c. 53, §§ 4-141–4-165." (Emphasis added.) Id., 604. We were faced with a conflict between General Statutes § 4-164, which then made actions of the commission on claims "final and conclusive on all questions of law and fact and . . . not . . . subject to review . . . by any court by appeal, mandamus or otherwise," and the Uniform Administrative Procedure Act, enacted ten years later, which provided for judicial review of contested cases decided by "all agencies

. . . not expressly exempted"; General Statutes § 4-185; without expressly exempting the claims commission. *Hirschfeld* v. *Commission on Claims,* supra, 605. We resolved the conflict by construing the two statutes together so as to permit appeals from the decision of the commission for limited purposes. Disappointed litigants would be entitled to judicial review if they could prove a statutory or constitutional violation within the terms of the first three grounds of General Statutes § 4-183 (g). Inferentially, no administrative review was authorized on the other grounds of § 4-183 (g). Id., 606–608.

The governing statutes, when the cases presently before us were brought to the commissioner of claims,[7] were those described in *Hirschfeld.* The defendant commissioner issued his amended finding and order on December 7, 1981, and the plaintiffs filed their appeals to the Superior Court on January 6, 1982. While the administrative appeals were pending in the Superior Court, the legislature enacted Public Acts 1982, No. 82-167, effective July 1, 1982. Section 1 of that act, codified as General Statutes § 4-164a, expressly exempted the claims commissioner from § 4-183, the provision of the Uniform Administrative Procedure Act that permits appeal to the Superior Court. In addition, § 6 of that Act amended General Statutes § 4-164 (b) to provide that "[t]he action of the claims commissioner in approving or rejecting payment of any claim or part thereof shall be final and conclusive on all questions of law and fact and shall not be subject to review except by the general assembly."

Relying upon these legislative amendments, the defendant commissioner moved the trial court to dismiss the appeals then pending for want of subject matter jurisdiction over them. The trial court denied this

---

[7] The commissioner of claims had statutorily replaced the commission on claims. Public Acts 1975, No. 75-605, § 1.

motion to dismiss, holding that it would work a substantial injustice to apply the new act retroactively to these plaintiffs.

The defendant's appeal to this court lists the jurisdictional impact of Public Acts 1982, No. 82-167, among its statement of issues. Nonetheless, in oral argument in this court, defense counsel stated that, since neither the text nor the legislative history of Public Acts 1982, No. 82-167, indicated that the legislature had intended the act to be retroactive, the defendant was abandoning this argument. That concession cannot, however, preclude appellate scrutiny of the trial court's jurisdiction since an absence of jurisdiction over the subject matter cannot be cured by waiver either in the trial court or here. Practice Book § 3110; *Neyland* v. *Board of Education,* 195 Conn. 174, 177, 487 A.2d 181 (1985); *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 678–79 n.1, 485 A.2d 1280 (1984).

Determination of the effect of the enactment of Public Acts 1982, No. 82-167, on the jurisdiction of the Superior Court encompasses two questions. First, was the act intended to clarify existing law or to change it? Second, if the act was intended to make a change, was the change intended to operate retroactively? It is plain that the legislature has rejected the *Hirschfeld* compromise between the conflicting claims of sovereign immunity and uniform administrative procedures. It is not clear whether this rejection means that the legislature has never provided a right of administrative appeal from the claims commissioner or whether such an appeal has only been forbidden since 1982. Cf. *Neyland* v. *Board of Education,* supra, 175–78.

In view of the legislature's plenary authority to define the scope of administrative appeals; *Neyland* v. *Board of Education,* supra, 183; *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 587, 418 A.2d 939

(1979); *Kosinski* v. *Lawlor*, 177 Conn. 420, 425, 418 A.2d 66 (1979); and the dictates of sovereign immunity, we conclude that Public Acts 1982, No. 82-167, should be read as a clarification of the Superior Court's ongoing lack of jurisdiction to hear appeals from the claims commissioner. Accordingly, the defendant's motion to dismiss these appeals should have been granted by the trial court because the Superior Court never had jurisdiction under any part of General Statutes § 4-183 (g).[8] The commissioner of claims performs a legislative function directly reviewable only by the General Assembly.

The plaintiffs, in order to sidestep the difficulties that inhere in the trial court's resolution of their claims, urge us to hold that they have a constitutional right to challenge the adverse decision of the defendant commissioner. They invoke their right to due process under the fourteenth amendment to the United States constitution and their comparable state rights under Article first, §§ 8 and 10, of the Connecticut constitution. To the extent that this argument is based upon the provisions of § 4-183 (g), it is foreclosed by our holding that

---

[8] Even if the trial court had correctly denied the original motion to dismiss, on the theory that the *Hirschfeld* doctrine governed pending appeals, these plaintiffs' claims were not cognizable. The trial court based its order of remand on its finding that the decision of the defendant commissioner was clearly erroneous because it was not supported by substantial evidence, and hence was illegal and arbitrary. In *Hirschfeld* v. *Commission on Claims*, 172 Conn. 603, 376 A.2d 71 (1977), this court did not go that far. We held that appeals would be permitted only if the decision of the claims commission was: (1) in violation of constitutional or statutory provisions; (2) in excess of the commission's statutory authority; or (3) made upon unlawful procedures. Id., 608. These grounds, described in General Statutes § 4-183 (g), subsections (1) through (3), do not encompass the trial court's broader inquiry into evidentiary sufficiency under § 4-183 (g), subsections (5) and (6). The defendant's decision was not premised, as the plaintiffs claim, on a finding that the culvert was adequately designed. The decision found, instead, a lack of proximate cause because of the unprecedented severity of the 1972 flood. The evidence to support the finding on proximate cause may have been meager, but it was not so lacking as to amount to a lack of due process under § 4-183 (g) (1).

no part of that section applies to the decisions of the defendant commissioner. To the extent that the argument suggests the existence of an inherent constitutional right to appeal adverse administrative rulings, it is unsupported by the existing case law. There is no federal constitutional right to an administrative appeal when the claimant has been afforded an adequate administrative hearing and the administrative decision does not implicate a fundamental constitutional right or a constitutionally suspect classification such as race, nationality or alienage. *Ortwein* v. *Schwab,* 410 U.S. 656, 659–60, 93 S. Ct. 1172, 35 L. Ed. 2d 572, rehearing denied, 411 U.S. 922, 93 S. Ct. 1551, 36 L. Ed. 2d 315 (1973); see also *Hortonville Joint School District No. 1* v. *Hortonville Education Assn.,* 426 U.S. 482, 497, 96 S. Ct. 2308, 49 L. Ed. 2d 1 (1976). We have repeatedly held that "[a]ppeals to courts from administrative agencies exist only under statutory authority." *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 6, 363 A.2d 1386 (1975); *Neyland* v. *Board of Education,* supra, 183. Other courts have likewise concluded that the doctrine of sovereign immunity furnishes a constitutionally rational basis for disallowance of judicial review of the decisions of claims commissions. *Blanc* v. *United States,* 244 F.2d 708, 710 (2d Cir.), cert. denied, 355 U.S. 874, 78 S. Ct. 126, 2 L. Ed. 2d 79 (1957); *Boshears* v. *Arkansas Racing Commission,* 258 Ark. 741, 746–48, 528 S.W.2d 646 (1975); *Raschillo* v. *The Industrial Commission,* 47 Ill. 2d 359, 361–63, 265 N.E.2d 663 (1970).

Our holding that the plaintiffs do not have a remedy by way of an administrative appeal does not, of course, foreclose other forms of judicial relief in an appropriate case. Even the proceedings of a legislative commission may come within the jurisdiction of a court "acting under the judicial power of article fifth of the [state] constitution . . . if . . . egregious and otherwise

irreparable violations of state or federal constitutional guarantees are being or have been committed by such proceedings." *Kinsella* v. *Jaekle,* 192 Conn. 704, 723, 475 A.2d 243 (1984). In the present case, however, we have neither a procedural nor a substantive basis for venturing upon an inquiry into the extent or the scope of possible judicial alternatives to administrative appeals.

There is error, the judgments of the trial court are set aside and the cases are remanded with direction to dismiss the appeals.

In this opinion the other judges concurred.