STEPHANIE TOISE *v.* AUDREY ROWE,
COMMISSIONER OF SOCIAL
SERVICES, ET AL.

DAVID DRESSLER *v.* AUDREY ROWE,
COMMISSIONER OF SOCIAL
SERVICES, ET AL.
(SC 15638)

Borden, Berdon, Palmer, McDonald and Peters, Js.

Argued November 6, 1997—officially released February 3, 1998

*Maria A. Kahn*, with whom was *Gwendolyn McDonald*, for the appellants (plaintiff in each case).

*Nyle K. Davey*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellees (defendants).

*Opinion*

PETERS, J. This appeal raises fundamental questions about the subject matter jurisdiction of the Superior Court to consider administrative appeals from decisions of the bureau of rehabilitation services (bureau) of the department of social services. The plaintiffs, Stephanie

Toise and David Dressler, both of whom have severe learning disabilities, applied to the bureau for reimbursement of certain educational expenses. The bureau denied the request of the first plaintiff in part and the request of the second plaintiff in whole.

In response to their separate appeals, the trial court, *Norko, J.*, in the first case, and *Maloney, J.*, in the second case, dismissed each plaintiff's request for judicial review of the decision of the bureau. In each case, the trial court held that it lacked subject matter jurisdiction because of the plaintiff's failure to establish that his or her administrative hearing qualified as a "contested case" as that term is used in General Statutes §§ 4-183 (a)[1] and 4-166 (2)[2] of the Uniform Administrative Procedure Act (UAPA).

The plaintiffs appealed from the judgments of the trial court to the Appellate Court, where their appeals were consolidated and the judgments of the trial court affirmed. The plaintiffs claimed that they had a right to judicial review because: (1) bureau hearings are required by the governing state and federal statutes; and (2) the existence of such a right was clarified by the enactment of Public Acts 1995, No. 95-355 (P.A. 95-355), now codified as General Statutes § 17b-654.[3] The

---

[1] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ." A final decision of the bureau director was issued in the first case on February 4, 1994, and in the second case on July 25, 1994.

[2] General Statutes § 4-166 (2) provides in relevant part: " 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168 . . . ."

[3] General Statutes § 17b-654 (c) provides in relevant part: "An individual who is aggrieved by a final agency decision made pursuant to subsection

Appellate Court rejected these claims. *Toise* v. *Rowe*, 44 Conn. App. 143, 152, 687 A.2d 557 (1997).

The plaintiffs petitioned for certification to appeal to this court. We granted certification limited to the following question: "Did the Appellate Court properly conclude that the trial court lacked subject matter jurisdiction over these administrative appeals?" *Toise* v. *Rowe*, 240 Conn. 913, 691 A.2d 1079 (1997). We now reverse the judgments of the Appellate Court and remand for further proceedings.[4]

The parties do not dispute that subject matter jurisdiction is a condition precedent to a court's authority to hear a case. *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698, 620 A.2d 780 (1993). They also recognize that, " '[t]he UAPA grants the Superior Court jurisdiction over appeals of agency decisions only in certain limited and well delineated circumstances.' " *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 800, 629 A.2d 367 (1993). The applicable statutes, §§ 4-183 (a), 4-166 (3) (A) and 4-166 (2),[5] dictate that, unless administrative decisions qualify as decisions in contested cases, they generally are not appealable to the Superior Court. Id., 799–801; *New England Dairies, Inc.* v. *Commissioner of Agriculture*, 221 Conn. 422, 427, 604 A.2d 810 (1992).

At issue is whether the plaintiffs' administrative hearings before the bureau properly may be characterized as contested cases. Resolution of that issue depends, in the first instance, on a determination of the version

(b) of this section may appeal therefrom in accordance with section 4-183. . . ."

[4] Our decision is limited to resolution of the procedural issue raised by the certified question and does not address the substantive merits of the plaintiffs' appeals.

[5] According to § 4-166 (3) (A) of the UAPA, one type of "final decision" is an "agency determination in a contested case . . . ." For the text of §§ 4-183 (a) and 4-166 (2), see footnotes 1 and 2 of this opinion.

of General Statutes § 17b-654 that applies—the version in effect at the time that the cases were filed originally,[6] or the version of the statute after amendment by P.A. 95-355.[7] The parties agree that, if P.A. 95-355 applies to these cases, the plaintiffs have a right to Superior Court review of the administrative decisions against them.

The plaintiffs argue that P.A. 95-355 was a clarifying act that should be applied retroactively to confer jurisdiction over appeals from administrative decisions of the bureau. The Appellate Court disagreed, concluding that P.A. 95-355 created a new substantive right to appeal and, therefore, was not retroactively applicable. We agree with the plaintiffs.

"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute." *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 316, 702 A.2d 1180 (1997). We focus on legislative intent in order to comply with General Statutes § 55-3, which provides that, "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation

[6] General Statutes (Rev. to 1993) § 17-664 (now § 17b-654) provided: "Any applicant for or recipient of vocational rehabilitation services who is aggrieved by a decision regarding eligibility for services, pursuant to section 17-663, shall be entitled to an administrative review by making written request to the department of human resources."

[7] General Statutes § 17b-654 (formerly § 17-664), as it incorporates P.A. 95-355, now provides: "(a) Any applicant for or recipient of vocational rehabilitation services may request an informal review of any decision made by the bureau pursuant to section 17b-653.

"(b) Regardless of whether a person requests an informal review under subsection (a) of this section, any applicant for or recipient of vocational rehabilitation services who is aggrieved by a decision made by the bureau pursuant to section 17b-653 may request an administrative hearing, by making written request to the director of the Bureau of Rehabilitation Services.

"(c) An individual who is aggrieved by a final agency decision made pursuant to subsection (b) of this section may appeal therefrom in accordance with section 4-183. Such appeals shall be privileged cases to be heard by the court as soon after the return day as shall be practicable."

on any person or corporation, shall be construed to have a retrospective effect." "The 'obligations' referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of *presumed* legislative intent that statutes affecting *substantive* rights shall apply prospectively only." (Emphasis in original; internal quotation marks omitted.) *Coley* v. *Camden Associates, Inc.*, supra, 316.

Even if a statute effects a substantive change in the law, it may be applied retrospectively, however, if the legislature so intends. *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991). "Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect." *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). " 'To determine whether an act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent.' " *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 40, 699 A.2d 101 (1997); *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, 238 Conn. 285, 290, 679 A.2d 925 (1996).

Statutes passed to resolve a controversy engendered by statutory ambiguity often are deemed to have a clarifying effect. *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, supra, 238 Conn. 290–91; *Caron* v. *Inland Wetlands & Watercourses Commission*, 222 Conn. 269, 278–79, 610 A.2d 584 (1992). "[I]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . ." *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, supra, 290, quoting 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1986) § 22.31, p. 276. As we have noted, " '[o]nce litigation brought [the statutory] ambiguity to light, the legislature acted to remove any

doubt about its earlier intentions.' " *State* v. *Magnano*, supra, 204 Conn. 283.

Because of "the legislature's plenary authority to define the scope of administrative appeals"; *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540–41, 489 A.2d 363 (1985); we have been especially deferential to statutory changes when the new statute may be characterized as clarifying the administrative law. "[T]he legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of procedural protections afforded by the UAPA to contested cases, including the right to appellate review by the judiciary. Deciding which class of cases qualifies for contested case status reflects an important matter of public policy and the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 810–11.

Applying these established principles of statutory construction, we look, for guidance about the legislature's intent, both to the context in which P.A. 95-355 was enacted and to the legislative history accompanying the enactment. Both of these indicia of legislative intent demonstrate that P.A. 95-355 was meant to clarify an existing statutory ambiguity.

The new statute has its origin in a controversy that first surfaced in 1994. At least through early 1994, the bureau believed and acted as though its determinations were "contested cases" appealable to the Superior Court under the UAPA. In February, 1994, for example, the bureau notified the plaintiff in the first case that, "[p]ursuant to § 4-183 of Connecticut General Statutes you have a right to appeal to Superior Court for the purpose of review of this decision." The legitimacy of

this practice apparently was put into doubt when the bureau was informed of a possible conflict with other established law. Specifically, the Regulations of Connecticut State Agencies effective October 28, 1988, provided that administrative review, the process by which bureau determinations were made pursuant to General Statutes § 17-664 (now § 17b-654), was "not a 'contested case' within the meaning of Section 4-166 (2) of the Connecticut General Statutes." Regs., Conn. State Agencies § 10-102-2 (b) (2). Disparate agency interpretations of the governing law demonstrate statutory ambiguities such as those presently before us.

The legislative history of P.A. 95-355 demonstrates that discussion of one of the bills incorporated into the act, House Bill No. 6832,[8] focused on the need to clarify the right to judicial review of bureau determinations. Hearings before legislative committees are a recognized source of legislative history. *Mahoney* v. *Lensink*, 213 Conn. 548, 559–60, 569 A.2d 518 (1990). In testimony before the human services committee in support of House Bill No. 6832, M. Elinor Budryk, of the office of protection and advocacy for persons with disabilities, stated: "This bill is necessary to clarify that clients of [the bureau], which is required by Federal law and regulation to provide fair hearing[s] to their clients and by their own regulations to hold those hearings as defined in the Uniform Administrative Procedure Act (UAPA) have a right of appeal to Superior Court. The UAPA includes such right and it has been offered by the Bureau until February of 1994 when it was challenged as lacking a statutory mandate. While we believe that, as a department of the Department of Social Services

---

[8] The *Public Act to Bill Number Index* in the *State Library* lists only House Bill No. 6764, which introduced the provisions codified as § 17b-654 (a) and (b), in the entry for P.A. 95-355. The provision of P.A. 95-355 that provides a right of judicial review, however, codified as § 17b-654 (c), was introduced as a separate, related bill, House Bill No. 6832.

(DSS) [the bureau] is already statutorily required to offer a [S]uperior [C]ourt appeal, this bill would clarify the issue. . . ." Conn. Joint Standing Committee Hearings, Human Services Committee, Pt. 7, 1995 Sess., pp. 2279–81.

In light of this testimony, and especially in the absence of any other relevant legislative history, we conclude that House Bill No. 6832 was incorporated into an earlier draft of the act that became P.A. 95-355 in order to clarify the existence of a right to judicial review of bureau determinations. The need for such clarification arose from statutory ambiguity manifested by the ongoing controversy about the existence of any appeal right for claimants disappointed by adverse bureau determinations. Accordingly, we conclude that P.A. 95-355 is clarifying legislation and, thus, retrospectively applicable.

Our conclusion is buttressed by the fact that retrospective application of P.A. 95-355 will not interfere with any reliance interest or established legal right. "The retroactive nature of clarifying legislation has limits . . . and must not operate in a manner that would unjustly abrogate vested rights. . . . A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another." (Citations omitted; internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 653, 687 A.2d 134 (1997); see *State* v. *Magnano*, supra, 204 Conn. 284. In the absence of a claim of detrimental reliance by any of the parties on an expectation that there would be no judicial review of bureau determinations, we conclude that P.A. 95-355 applies retrospectively in these cases.[9]

---

[9] Having determined that P.A. 95-355 confers jurisdiction over these administrative appeals, we need not decide whether state or federal statutes, prior

The judgments of the Appellate Court are reversed and the cases are remanded to that court with direction to reverse the judgments of dismissal of the trial court and to remand the cases to the trial court for further proceedings according to law.

In this opinion BORDEN, BERDON and PALMER, Js., concurred.

MCDONALD, J., dissenting. The majority finds Public Acts 1995, No. 95-355 (P.A. 95-355), to be retrospective in application. That public act, codified as General Statutes § 17b-654, provided for judicial review under the Uniform Administrative Procedure Act (UAPA); General Statutes § 4-166 et seq.; of administrative decisions concerning vocational rehabilitation services. Prior to the enactment of P.A. 95-355, the legislative regulation review committee[1] had approved § 10-102-2 (b) (2) of the Regulations of Connecticut State Agencies, which specifically provides that there be no judicial review under the UAPA of such decisions. At the time, General Statutes (Rev. to 1993) § 17-664, now codified as § 17b-654, provided: "Any applicant for or recipient of vocational rehabilitation services who is aggrieved by a decision regarding eligibility for services . . . shall be entitled to an administrative review by making written request to the department of human resources." Section 10-102-2 (b) (2) provides: " 'Administrative Review' means an informal procedure through which the Division affords an opportunity to a client or applicant for

to the passage of P.A. 95-355, created a right of appeal from bureau decisions under the UAPA. We similarly need not address the plaintiffs' claim that considerations of public policy require us to hold that the Superior Court has jurisdiction over these administrative appeals.

[1] General Statutes § 4-170 provides in relevant part: "(c) The committee shall review all proposed regulations and, in its discretion, may hold public hearings thereon, and may approve, disapprove or reject without prejudice, in whole or in part, any such regulation. . . ."

General Statutes § 4-171 requires review of all disapproved regulations by the General Assembly.

rehabilitation services, his or her parent, guardian or other representative, to express and seek remedy for dissatisfaction with Division action or inaction in the provision or denial of such services. *Administrative Review is not a 'contested case' within the meaning of Section 4-166 (2) of the Connecticut General Statutes."* (Emphasis added.) This history contradicts the majority's conclusion that P.A. 95-355 clarified the existing law and should be applied retrospectively.

Accordingly, I would affirm the judgment of the Appellate Court.