STEPHANIE TOISE *v.* AUDREY ROWE,
COMMISSIONER OF SOCIAL
SERVICES, ET AL.
(AC 23484)

Schaller, West and DiPentima, Js.

Argued January 12—officially released April 6, 2004

*Gwendolyn K. McDonald,* for the appellant (plaintiff).

*Maureen D. Regula,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Eliot D. Prescott,* assistant attorney general, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Stephanie Toise, appeals from the judgment of the trial court dismissing her administrative appeal from the decision of the bureau of rehabilitation services (bureau) of the department of social services, of which the defendant Audrey Rowe was the commissioner at the time this matter first arose.[1] On appeal, the plaintiff claims that the court improperly determined that she was not entitled to tuition support from the bureau.[2] We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The plaintiff has a learning disability. She was found eligible for assistance from the bureau in December, 1990.[3] In May, 1991, the plain-

[1] Also named as a defendant was John F. Halliday, the director of the bureau.

[2] The plaintiff also claims that the hearing officer improperly limited the tuition support to the cost of a comparable program at a Connecticut state supported college or university and to one semester. Because we determine that the plaintiff was not entitled to tuition support from the bureau, we do not reach those issues.

[3] "The bureau of rehabilitation services is a unit of the state department of social services. The department administers and provides a variety of welfare, employment, housing and human service programs. It is the designated state agency for administration of the state plan for vocational rehabilitation services [as authorized under the Rehabilitation Act of 1973, 29 U.S.C. § 701-803]. See General Statutes § 17b-2; 29 U.S.C. § 721 (a) (1); 34 C.F.R. § 361.5. The bureau operates a statewide vocational rehabilitation program

tiff and the bureau created an individualized written rehabilitation program (program). The program stated that the plaintiff's "vocational goal" was to become a "public health worker" with the following intermediate goals: (1) "[t]o obtain [a] Master's [degree] in Public Health through Yale University," funded through student loans, and (2) "[t]o determine [the] appropriateness of [a] computer purchase" with funding from the bureau. The one page program contained the qualification that "[d]ue to a spending freeze, any services listed in this planned program tha[t] could result in a cost to the Agency are tentative and will require review when funding becomes available. This will be done jointly to determine that the vocational goal and the services indicated are still appropriate and necessary." Funding by the bureau can be provided only in accordance with a jointly developed and agreed on program. Regs., Conn. State Agencies § 10-102-15 (b). The plaintiff signed the program in June, 1991.

During the summer of 1991, the plaintiff requested tuition assistance for a summer course and was informed of the continuing spending freeze, which would make financial assistance "a virtual impossibility." In November, 1991, the plaintiff graduated from Yale University with her master's degree. The plaintiff requested additional services and financial support from the bureau. A bureau counselor denied the request. At the plaintiff's insistence, an administrative review of that decision was conducted. On July 10, 1992, the administrative reviewer denied the plaintiff's request for funding and services. The plaintiff requested a hearing to appeal from the bureau's decision.

in accordance with General Statutes § 17b-650 et seq. It is the designated state unit for rehabilitation services under both state and federal authority. See General Statutes § 17b-651; 29 U.S.C. § 721 (a) (2); 34 C.F.R. § 361.6." *Toise* v. *Rowe*, 44 Conn. App. 143, 144 n.1, 687 A.2d 557 (1997), rev'd on other grounds, 243 Conn. 623, 707 A.2d 25 (1998).

"The bureau held a hearing and a hearing officer issued a decision on October 4, 1993. The hearing officer reversed the bureau's decision as to tuition assistance and ordered the bureau to pay for one semester of a comparable program at the University of Connecticut. The bureau's director reviewed the hearing officer's decision. On February 4, 1994, the director reversed the hearing officer's decision. The plaintiff sought review by the Superior Court. On August 2, 1995, the trial court, *Norko, J.*, rendered judgment dismissing the appeal on the ground that it lacked subject matter jurisdiction to entertain the appeal." *Toise* v. *Rowe*, 44 Conn. App. 143, 145, 687 A.2d 557 (1997), rev'd, 243 Conn. 623, 707 A.2d 25 (1998). The plaintiff appealed from that decision to this court on the limited question of subject matter jurisdiction. We affirmed the judgment of the court. Id., 152. Our Supreme Court granted certification to appeal, reversed our decision and remanded the case to the trial court for further proceedings. *Toise* v. *Rowe*, 243 Conn. 623, 632, 707 A.2d 25 (1998). The plaintiff now appeals from the decision of the trial court dismissing her administrative appeal on the merits.

The plaintiff claims that the court improperly determined that she was not entitled to tuition support from the bureau. Specifically, the plaintiff argues that the court improperly concluded that (1) the plaintiff was not entitled to financial assistance because it was not provided for in the program, (2) the bureau could not retroactively provide assistance, (3) the bureau did not fail to inform her of her rights, and (4) the bureau's decision that was upheld by the court did not violate the purpose and intent of the Rehabilitation Act of 1973 (act), 29 U.S.C. § 701 et seq.

"We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] . . . Judicial review

of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [Constrained by a narrow scope of review] [n]either this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citation omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *Commission on Human Rights & Opportunities*, 72 Conn. App. 212, 222, 804 A.2d 1033, cert. denied, 262 Conn. 920, 812 A.2d 863 (2002).

I

The plaintiff first argues that the court improperly concluded that the plaintiff was not entitled to financial assistance because it was not provided for in the program. We disagree.

The plaintiff's program stated that her Yale University tuition would continue to be funded through student

loans. There is no provision in the program for the bureau to provide financial assistance for her tuition. State and federal regulations are clear that financial assistance will "be made *only* in accordance with an appropriately completed Individualized Written Rehabilitation Program." (Emphasis added.) Regs., Conn. State Agencies § 10-102-15 (b); see also 29 U.S.C. § 722 (b). The plaintiff explicitly acknowledged that she "participated in the development of this program" and understood and accepted it.

The court's memorandum of decision correctly stated that "[b]ecause these authorities are clear that the agency can only provide funding for services, and particularly higher education, in accordance with [a program] that the bureau and the plaintiff jointly develop and agree upon, and because [the program] in this case reveals that there was no agreement that the bureau would provide funds for the plaintiff's Yale University tuition, the plaintiff lacked an essential ingredient to obtaining tuition assistance from the bureau." Accordingly, the court correctly found that the plaintiff was not entitled to financial assistance because it was not provided for in the program.

## II

The plaintiff also argues that the court improperly concluded that the bureau could not provide financial assistance retroactively. The plaintiff's reliance on *McGuire* v. *Switzer*, supra, 734 F. Sup. 99, is misguided. She argues that *McGuire* permits her to seek retroactive relief. The court's memorandum of decision correctly concluded, however, that *McGuire* "holds only that a request under the Rehabilitation Act for reimbursement of graduate school tuition is not barred by the eleventh amendment [to the United States constitution] or the mootness doctrine." Those issues are not present in this case. Furthermore, the decision in *McGuire* does

not conflict with the applicable federal regulation, which provides in relevant part that "[t]he State plan must assure that written authorization is made, either before or at the same time as the purchase of services. . . ." 34 C.F.R. § 361.44 (1994). Therefore, the bureau correctly determined that it could not reimburse the plaintiff for the tuition payments that she already had made.

## III

The plaintiff next argues that the court improperly concluded that the bureau did not fail to inform her of her right to tuition assistance. She argues that she was not advised of her right to seek financial assistance for her Yale University tuition and, therefore, she did not request it. She further contends that the bureau's failure to fulfill its duty to inform her of her right to tuition assistance inhibited her from fully participating in the development of her program as contemplated by the act. The plaintiff requests "compensatory payment for services as should have been offered to remedy the violation of regulations and the counselor's manual as occurred here."

Compensatory payments do not apply here because such payments would be a proper remedy only if the bureau's error resulted in services not being offered that should have been offered. As discussed in parts I and II of this opinion, the bureau properly did not provide tuition assistance because of the applicable federal regulations that prohibit retroactive payments. The trial court determined that "even if the bureau had advised the plaintiff of the availability of state tuition assistance, the bureau would not have had authority to include such assistance in the [program] signed in June, 1991. In this case, the plaintiff sought written authorization . . . after she had completed most of her studies at Yale, rather than before or contemporaneously with her

matriculation." The trial court correctly concluded that the bureau's failure to inform her of her right to tuition assistance was irrelevant when the request was for retroactive payment.

## IV

The plaintiff finally argues that the court improperly concluded that the bureau's decision did not violate the purpose and intent of the act. We disagree.

The plaintiff properly asserts that the purpose of the act is "to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individuals with significant disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living." 29 U.S.C. § 701 (b) (2). "Individuals with disabilities must be provided the opportunities to obtain gainful employment in integrated settings." 29 U.S.C. § 720 (a) (3) (B).

"The Act is sprinkled with references to providing 'opportunities' for 'meaningful' and 'gainful' employment to individuals with disabilities. It nowhere guarantees actual optimal employment. Notably, a primary purpose of the Act is to '[assist] States and providers of services in fulfilling the aspirations of . . . individuals with disabilities for *meaningful and gainful employment*' (29 U.S.C. § 701 [b] [2] . . .). Further, 'the goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to . . . achieve *equality of opportunity* . . . employment . . . and economic and social self-sufficiency' (29 U.S.C. § 701 [a] [6] [B] . . .). . . . Appellant's arguments do not . . . support her desired outcome, that her particular rehabilitation program must provide, guarantee or continue until optimal employment is actually secured." (Citations omitted; emphasis in original.)

*Murphy* v. *Office of Vocational & Educational Services for Individuals with Disabilities*, 92 N.Y.2d 477, 484, 705 N.E.2d 1180, 683 N.Y.S.2d 139 (1998). The plaintiff was not guaranteed optimum employment, and the bureau was unable to provide tuition support due to the applicable federal regulations that prohibit retroactive payments. Accordingly, the court correctly determined that the plaintiff was not entitled to tuition support from the bureau.

The judgment is affirmed.

In this opinion the other judges concurred.